# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SECURITY ALARM FINANCING ENTERPRISES, L.P., a California Limited Partnership,<br><br>Plaintiff and Cross-Defendant,<br><br>v.<br><br>ALARM PROTECTION TECHNOLOGY, LLC, a Utah Limited Liability Company; ALARM PROTECTION TECHNOLOGY ALASKA, LLC, a Utah Limited Liability Company; and ALARM PROTECTION ALASKA, LLC, a Utah Limited Liability Company,<br><br>Defendants and Cross-Claimants. | Case No. 3:13-cv-00102-SLG |

## ORDER RE PRELIMINARY INJUNCTION

At Docket 53 is Security Alarm Financing Enterprises's ("SAFE") Motion for Preliminary Injunction against Defendants ("APT"). The motion has been fully briefed and oral argument was held on April 27, 2015. For the reasons set forth below, the motion will be denied.

## BACKGROUND

The facts as alleged by SAFE are as follows: SAFE is in the business of selling, installing, servicing, and monitoring residential and commercial security alarm systems throughout the United States and Canada.[1] SAFE's primary means of acquiring new customers is by purchasing customer accounts from other security alarm companies. In

---
[1] Docket 1 (Compl.) at 2.

February 2013, SAFE purchased more than 34,000 monitoring accounts from three alarm companies known collectively as Pinnacle. 1,300 of those accounts were for customers in Alaska. Those 1,300 purchased accounts are SAFE's only Alaskan accounts.[2]

SAFE alleges that it historically experiences a 12% annualized account attrition rate, but that the attrition rate on its Alaska accounts has been significantly higher. SAFE observed that numerous Alaska customers requested cancelation using 3 x 5 cards or 8 ½ x 11 handwritten notes containing identical handwriting. SAFE investigated the account cancelations and alleges that APT has been inducing its Alaskan customers to cancel their contracts with SAFE and establish service through APT using deceptive business practices that SAFE maintains violate state and federal laws. SAFE also alleges that APT has intentionally interfered with SAFE's contracts and that it has defamed SAFE.[3]

In its motion, SAFE maintains that the Alaskan monitoring contracts it acquired were all substantially similar in that they obligated the customer to pay a monthly monitoring fee for a set period of time. If the customer canceled the contract prior to the expiration of that time period, the customer was obligated to pay a sliding cancelation fee.[4] SAFE asserts that APT hired former Pinnacle salespersons to solicit former Pinnacle customers to cancel their contracts with SAFE and instead obtain security services from APT. SAFE asserts that APT salespersons use four deceptive tactics to

---

[2] *Id.* at 4; *compare* Docket 56 (Brief) at 6 (asserting 1,800 Alaska alarm accounts acquired).

[3] *Id.* at 6–13 (alleging a 90% cancelation rate as of May 31, 2014); *compare* Docket 56 (Brief) at 10 (asserting a cancelation rate of 60% as of December 2014).

[4] Docket 56 (Brief) at 7.

persuade SAFE customers to switch to APT: (1) APT "pre-tickets" by inserting an inflated price in its pre-printed contracts and then offering prospective customers a lower "deal" price; (2) APT misrepresents that it is a local Alaskan company; (3) APT offers to pay the customer's cancelation fee; and (4) APT misrepresents to SAFE customers that APT is "taking over" for SAFE as a new service provider on the existing alarm account.[5] SAFE seeks an order enjoining APT from engaging in each of those activities while this case moves forward, as well as an order preventing APT from selling any of its Alaska accounts from former SAFE customers during the pendency of the case.

## DISCUSSION

Plaintiffs seeking preliminary injunctive relief must establish that "(1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest."[6] "Under the 'sliding scale' approach to preliminary injunctions observed in [the Ninth Circuit], 'the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'"[7] But in any event, even with the sliding scale approach, United States Supreme Court precedent requires that "plaintiffs must establish that irreparable harm is *likely*, not

---

[5] Docket 56 (Brief) at 8–10.

[6] *Sierra Forest Legacy v. Ray*, 577 F.3d 1015, 1021 (9th Cir. 2009) (citing *Winter v. Nat. Resources Def. Council, Inc.,* 555 U.S. 7, 20 (2008)).

[7] *Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012). *See also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (2011) (discussing post-*Winter* circuit split over continuing viability of the sliding scale approach and joining the Seventh and Second Circuits in retaining it).

just possible, in order to obtain a preliminary injunction."[8]  Injunctive relief is an equitable remedy, and "[t]he essence of equity jurisdiction is the power of the court to fashion a remedy depending upon the necessities of the particular case."[9]

For harm to be irreparable so as to warrant equitable relief there must be no adequate remedy at law.  "[I]f plaintiff either can bring a legal action and seek damages that will compensate him fully, or if plaintiff can assert his claim as a defense in some other proceeding, the alternative remedy is adequate,"[10] and equitable relief should be denied.  "To establish a likelihood of irreparable harm, conclusory or speculative allegations are not enough."[11]

SAFE asserts that it "has and will continue to lose customers and suffer damage to its goodwill if APT's deceptive practices are not stopped."[12]  SAFE cites *Stuhlburg Int'l Sales Co. v. John D. Brush & Co.* for support.  In *Stuhlburg*, the Ninth Circuit applied the pre-*Winter* standard for preliminary injunctive relief when it concluded that "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."[13]  But post-*Winter*, a court must find that irreparable harm

---

[8] *Alliance for the Wild Rockies*, 632 F.3d at 1131 (emphasis in original).  In *Winter*, the Supreme Court held that the *possibility* of injury is not enough; the movant must, at a minimum, demonstrate the *likelihood* of irreparable injury in the absence of an injunction.  *Winter*, 555 U.S. at 22.

[9] *Sierra Forest*, 577 F.3d at 1022 (citing *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175 (9th Cir. 1987)).

[10] WRIGHT & MILLER § 2944.

[11] *Titaness Light Shop, LLC v. Sunlight Supply, Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (citing *Herb Reed Enters., LLC v. Florida Ents. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)).

[12] Docket 56 (Brief) at 22.

[13] 240 F.3d 832, 841 (9th Cir. 2001).

is *likely*, not merely possible, to accord preliminary injunctive relief. Here, SAFE has failed to meet that standard.

First, the extent of loss of current customers due to APT's allegedly illegal actions is both discoverable and quantifiable. Therefore, those losses are likely to be fully compensable through money damages. Accordingly, SAFE's alleged loss of customers does not support a finding of a likelihood of irreparable harm. As to SAFE's assertion that it faces irreparable harm from loss of goodwill, SAFE is not in the business of selling new security accounts to customers in Alaska but instead purchases contracts from other security companies. It is therefore unclear how its business is likely to be damaged by a loss of goodwill among consumers who are not already SAFE customers.[14] And, as noted above, any loss of goodwill on the part of current SAFE customers that results in a cessation of their business relationship with SAFE would appear to be a quantifiable loss compensable through money damages. While the Ninth Circuit has recognized that "intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm," the mere possibility of such harm does not equate to the *likelihood* of irreparable harm required by *Winter*.[15] One of SAFE's primary arguments for loss of

---

[14] *Cf. Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (upholding a district court's finding of no irreparable harm where plaintiff failed to show that harm to its goodwill and consequently business was the result of the activities it sought to enjoin).

[15] *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (a pre-*Winter* case in which the Circuit upheld preliminary injunctive relief based on a finding that there was a possibility of irreparable harm). In its Reply brief, SAFE also cites to a Northern District of California case involving use of Facebook's logo in emails, *Facebook, Inc. v. Power Ventures, Inc.,* 2013 WL 5372341 (N.D. Cal. 2013). But that case was before the Court on a motion to reconsider a motion for summary judgment for Facebook and the award of *permanent* injunctive relief, and the Court relied in part on the fact that the defendant had filed for bankruptcy such that money damages would be inadequate. Likewise, the other case cited in SAFE's Reply also concerned a request for *permanent* injunctive relief after a jury trial in

goodwill among non-customers is the potential effect of customer complaints on its Better Business Bureau rating. But the Court finds that SAFE has not shown a sufficient connection between APT's alleged conduct, SAFE's Better Business Bureau rating, and detriment to SAFE's business so as to warrant preliminary injunctive relief. Moreover, loss of goodwill is not *per se* likely to cause an irreparable harm—indeed, goodwill is routinely valued when businesses are bought and sold, and under Alaska law "[a] defamed party may recover damages for harm to reputation, wounded feelings and humiliation, . . . and estimated future damages of the same kind."[16] In fact, as APT notes in its opposition to the motion, SAFE evidently placed a dollar value on each of its Alaska accounts when it acquired them, as well as a liquidated damages amount if SAFE were to lose one or more of the accounts it had purchased back to that competitor.[17] In short, SAFE has not demonstrated that there is a likely loss of goodwill prior to trial that could not be adequately compensated by a damages award if SAFE prevails on its claims. Accordingly, the Court finds that on the current record SAFE has not demonstrated the requisite likelihood of irreparable harm to support preliminary injunctive relief.[18]

---

which the jury had awarded damages for the prior trademark infringement. *See Skydive Arizona, Inc., v. Quattrocchi*, 2010 WL 1743189 (D. Ariz. 2010).

[16] *City of Fairbanks v. Rice*, 20 P.3d 1097, 1107–08 (Alaska 2000).

[17] *See* Docket 62 (Opp.) at 14–15.

[18] SAFE has included a number of district court orders from other courts granting injunctions on competitor activity while Lanham Act and state-law unfair trade practices claims move forward. The only attached order with any substantive analysis of this issue applies the lower "threat of irreparable harm" standard superseded by *Winter. See ADT, LLC, v. Alarm Protection Tech. Florida, LLC, et al.*, Case No. 12-80898-Civ-Ryskamp/Hopkins (S.D. Florida Oct. 15, 2012). The remaining orders evidence the issuance of preliminary injunctions but do not include any substantive analysis of the irreparable harm issue.

SAFE also asserts that APT is seeking to sell former SAFE accounts and that SAFE will suffer irreparable harm because APT is attempting "to rid itself of the disputed assets and distance itself from using those assets to fund a final judgment."[19] SAFE seeks an injunction preventing APT from selling any customer account obtained in Alaska and cites *Johnson v. Couturier* for support. There, the Ninth Circuit held that "[a] party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, *or other inability to recover monetary damages*, if relief is not granted."[20] Here, SAFE has provided no indication that supports a finding that APT would likely be judgment-proof if it sold all the accounts at issue here.[21] Accordingly, the limited asset freeze that SAFE seeks at this time is not warranted.

## CONCLUSION

SAFE has failed to demonstrate a likelihood of irreparable harm, which is a prerequisite to preliminary injunctive relief. Accordingly, the Court does not reach the other prerequisites for preliminary injunctive relief, and IT IS ORDERED that SAFE's Motion for Preliminary Injunction at Docket 53 is DENIED.

DATED at Anchorage, Alaska, this 1st day of June, 2015

/s/ Sharon L. Gleason
UNITED STATES DISTRICT JUDGE

---

[19] Docket 54 (Brief) at 23.

[20] 572 F.3d 1067, 1085 (9th Cir. 2009) (emphasis added).

[21] SAFE cites to *Takiguchi v. MRI Intern., Inc.*, 2014 WL 4664840 (D. Nev. Sept 18, 2014) for support. There, the district court entered a preliminary injunction freezing the assets of defendants in a class-action Ponzi-scheme suit upon evidence that the defendants were dissipating or concealing assets that appeared likely to provide the only available relief for the plaintiff class. *Id.* at *5–6. No comparable showing has been made here.