# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

SECURITY ALARM FINANCING
ENTERPRISES, L.P., a California Limited
Partnership,

Plaintiff and Counterclaim Defendant,

v.

ALDER HOLDINGS, LLC, a Utah Limited
Liability Company; ALARM PROTECTION
TECHNOLOGY, LLC, a Utah Limited
Liability Company; ALARM PROTECTION
TECHNOLOGY ALASKA, LLC, a Utah
Limited Liability Company; ALARM
PROTECTION ALASKA, LLC, a Utah
Limited Liability Company,

Defendants and Counterclaimants.

Case No. 3:13-cv-00102-SLG

---

## ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment at Docket 351.
The motion is fully briefed,[1] and oral argument was held on December 15, 2016.[2]
Plaintiff's motion at Docket 339 for summary judgment on Alarm Protection's
counterclaims will be addressed in a separate order.

## BACKGROUND

The following facts are drawn from SAFE's First Amended Complaint (FAC) at
Docket 301, and are offered by way of background.

---

[1] *See* Docket 355 (Mem.); Docket 393 (Opp.); Docket 416 (Reply).

[2] *See* Docket 445 (Hr'g Mins.).

In early 2013, the home alarm and security company Pinnacle sold its customer accounts to SAFE. This transaction included hundreds of customers in Alaska; these became SAFE's only customers in Alaska. But almost immediately, SAFE noticed that it was suffering an unusually high rate of attrition among its Alaska customers—many customers were cancelling their service with SAFE using what appeared to SAFE to be prewritten cancellation letters. SAFE suspected its customers were being actively poached by another alarm company and began investigating the cause of the high attrition rates. Based on that informal investigation, SAFE concluded—and subsequently alleged in its Complaint[3]—that Alarm Protection salespersons were systematically targeting SAFE's customers using a customer list obtained from a former Pinnacle employee. SAFE alleged that Alarm Protection's employees were making false statements about SAFE, about Alarm Protection, and about the relationship between the two companies, all in an effort to deceive SAFE's customers into switching to Alarm Protection's services. This suit and countersuit followed.

## DISCUSSION

### I. Jurisdiction

The Court has jurisdiction over Claim I pursuant to 28 U.S.C. § 1331 because it arises under the Lanham Act, 15 U.S.C. § 1125. The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367 because each arises from the same transaction or occurrence as Claim I.[4]

---

[3] *See* Docket 1. The operative complaint for this motion is the Amended Complaint at Docket 301, which maintains the same claims and allegations but added a new defendant.

[4] The Court has insufficient information to determine the citizenship of the parties for diversity purposes. Plaintiff is a limited partnership, but the Court cannot discern who its partners are and

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 2 of 33

## II. Standard for Summary Judgment

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[5] And because SAFE bears the burden of proof at trial, Alarm Protection may prevail at summary judgment if it shows that "there is an absence of evidence to support [SAFE's] case."[6] But "[i]t is not enough to move for summary judgment . . . with a conclusory assertion that the plaintiff has no evidence to prove his case."[7] If Alarm Protection does meet its burden, the burden then shifts to SAFE "to designate specific facts demonstrating the existence of genuine issues for trial."[8]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-moving party's favor.[9] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[10] If the

---

where they are citizens. Defendants are four LLCs, but the Court cannot discern who their members are and where they are citizens.

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[6] *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[7] *Celotex*, 477 U.S. at 328 (White, J., concurring).

[8] *Oracle*, 627 F.3d at 387.

[9] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)).

[10] *Id.* at 248.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 3 of 33

evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[11]

## III. Analysis

Defendants Alder Holdings, Alarm Protection Technology, Alarm Protection Technology Alaska, and Alarm Protection Alaska (collectively, Defendants)[12] move for summary judgment to narrow and eliminate several of Plaintiff SAFE's claims.

First, Defendants seek to limit all of Plaintiff's claims to the fifty customers that Plaintiff specifically identified in discovery.

Second, they seek summary judgment to limit Plaintiff's Unfair Trade Practices Act (UTPA) claim to alleged misrepresentations.

Third, they seek to eliminate Plaintiff's Lanham Act and UTPA claims that are based on (1) statements by Alarm Protection employees that Alarm Protection is "local"; (2) statements that SAFE had service issues in Alaska; (3) statements that SAFE resisted customers' cancellation requests; and (4) statements that Alarm Protection was "wireless" and "safer." They thereby seek to limit SAFE's Lanham Act and UTPA claim to allegations that Alarm Protection employees falsely stated that SAFE had gone out of business and that Alarm Protection had taken over SAFE's accounts. They also seek to eliminate the remaining Lanham Act claim for disgorgement on the grounds that SAFE has no evidence

---

[11] *Id.* at 249.

[12] The Court's prior orders in this case referred to Defendants alternatively as "Alarm Protection" or "APT" (and on more than one occasion, "ATP"). Defendants refer to themselves as Alarm Protection, and so the Court will adopt that nomenclature going forward.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 4 of 33

of any specific revenues of Defendants tied to the customers to whom such statements were made.

Fourth, Alarm Protection seeks summary judgment on SAFE's trade secrets claim on the grounds that SAFE has no evidence that Alarm Protection ever possessed SAFE's customer list, much less used it, and no evidence of damages arising from any such use.

Fifth, Alarm Protection seeks partial summary judgment on SAFE's defamation per se claim because Alarm Protection maintains that the claim is based primarily on statements that cannot be shown to be false and statements that are expressions of opinion. Alarm Protection asserts that the only defamation per se claim that should survive summary judgment is that based on alleged statements that SAFE was going out of business.

Sixth, Alarm Protection contends that the defamation per quod claim fail because SAFE has no evidence of special damages.

Seventh, Alarm Protection seeks summary judgment on SAFE's intentional interference of contract claims on the grounds that SAFE's contracts were unenforceable under Alaska law and that SAFE cannot show that Alarm Protection's alleged conduct "engendered" the breach.

Eighth, Alarm Protection seeks summary judgment on the Lanham Act claim based on Alarm Protection's use of the word "safe" on its websites.

Ninth, and finally, Alarm Protection argues that because SAFE's damages expert, John Brady, has been excluded, SAFE cannot prove any damages at all.[13]

---

[13] These nine points are summarized in Alarm Protection's motion at Docket 351.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 5 of 33

The Court will address each of these contentions in turn.

*A. Limiting the case to fifty customers*

Alarm Protection contends that when the Court denied its motion to dismiss, it required that SAFE "disclose, customer by customer, the allegedly improper statements or conduct of Alarm Protection that SAFE intends to present at trial."[14] And because SAFE has only disclosed statements related to no more than fifty customers,[15] Alarm Protection argues that SAFE cannot recover damages or press any claims based on any other customers.[16] SAFE counters that it can prove a broader unfair practice based on statements made to just a few customers, and that it need not present every statement made to every customer that it claims was lost to Alarm Protection.[17]

The Court did state that it found "considerable merit in defendant's observation that there is an entitlement to have all of the statements identified that plaintiff has as the basis for its cause of action to defendant," and that the Court "would not anticipate or expect there to be any other evidence of other statements made, other than that which has been clearly disclosed in response to a discovery request."[18] The Court added that "each side, to the extent it's alleging defamation or other misstatements by the other side, must identify each of those statements, to the extent requested in discovery, if that party

_____

[14] Docket 355 at 11.

[15] The parties vigorously dispute the precise number of statements SAFE disclosed, *see* Docket 355 at 29; Docket 359 at 15; Docket 416 at 13, but the Court need not settle that dispute at this juncture.

[16] Docket 355 at 28–29.

[17] Docket 393 at 10–11.

[18] Docket 179 (Hr'g Tr.) at 6:7–16.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 6 of 33

intends to rely on those statements at trial."[19]  The Court stands by those statements, but it appears that Alarm Protection reads too much into them.  The Court did not intend to limit SAFE's entire *case* to disclosed statements, but only to limit the *evidence*—that is, the statements that the "party intends to rely on . . . at trial"—to disclosed statements.

Alarm Protection's reply does not address SAFE's legal argument that it could prove a broader case based on a comparatively narrow group of customers.  But Lanham Act damages in particular need not be proven with specificity regarding each customer, as a trier of fact may "accept 'crude' measures of damages based upon reasonable inferences so long as those inferences are neither 'inexorable . . . [nor] fanciful.'"[20]  Likewise, the UTPA prohibits "unfair or deceptive acts *or practices.*"[21]  Depending on the evidence presented, the jury might reasonably infer from statements made to fifty former SAFE customers that Alarm Protection engaged in a wider practice that was unfair under the act.[22]  The Court will not grant summary judgment limiting SAFE's "case" to fifty customers.

### B.  UTPA limited to representations

Alarm Protection seeks to eliminate, at summary judgment, the possibility of liability under the UTPA based on certain alleged conduct.  Specifically, Alarm Protection

---

[19] Docket 179 at 6:25–7:3.

[20] *Skydive Ariz., Inc. v. Quattrocchi*, 673 F.3d 1105, 1112 (9th Cir. 2012) (quoting *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 621 (9th Cir. 1993)) (omission and alteration in original).

[21] AS 45.50.471(a).

[22] The Court certainly does not mean to suggest that SAFE must or should present fifty witnesses. Depending on the evidence presented at trial, a jury might be able to reasonably infer such a practice from far fewer customers.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 7 of 33

argues that the UTPA does not impose liability for offers to pay cancellation fees, preparation of cancellation letters, or preticketing.[23]

### 1. Cancellation Fees and Cancellation Letters

Alarm Protection contends that there is no evidence or authority that, standing alone, the act of offering to pay a customer's cancellation fee is an unfair or deceptive act or practice under the UTPA. The practice alleged by SAFE, Alarm Protection asserts, does not fall within the UTPA's prohibition on using checks the cashing of which obligates the recipient.[24] And, Alarm Protection continues, there is simply no authority suggesting that assisting a customer in terminating prior contracts is somehow unfair or deceptive. SAFE responds that the practice is in fact deceptive. But SAFE's evidence that the practice is deceptive focuses on other deceptive actions taken in relation to the checks and letters.[25] The Court agrees with Alarm Protection that UTPA liability cannot be based *solely* on the practice of assisting with cancellation or providing reimbursement. But the Court recognizes that this practice was integrated into other alleged misconduct, and the Court does not mean to suggest by this ruling that SAFE will not be permitted to present evidence related to the predrafting of cancellation letters or offers to reimburse cancellation fees.

---

[23] *See* Docket 355 at 30.

[24] *See* AS 45.50.471(53) (identify as an unfair practice "offering a check . . . if the cashing or deposit of the check obligates the endorser or payee identified on the check to pay for goods or services.").

[25] *See* Docket 393 at 25.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 8 of 33

*2. Preticketing*

On this point, Alarm Protection does not argue that its apparently "common practice of including preprinted retail prices for equipment and services on its contracts" and then reducing the prices as a matter of course is not deceptive.[26] Instead, Alarm Protection contends only that "SAFE has no evidence of any specific customer that it lost because of alleged 'preticketing.'"[27] SAFE points to deposition testimony from one former SAFE customer who indicated that she understood the price reduction to be a "promotion" whereby if she signed a contract with Alarm Protection she would be charged "a much lower fee than they would normally charge."[28] Alarm Protection points to other aspects of its products and services that were appealing to that customer, but these do not conclusively establish that the "discount" was not a factor in that customer's decision.[29] A jury could reasonably infer from this evidence that Alarm Protection's practices were a proximate cause of this customer's decision to leave SAFE.

*C. Non-liability for certain statements*

*1. Statements that Alarm Protection is "local"*

Alarm Protection contends that statements that it is a "local" company cannot be a basis for Lanham Act or UTPA claims because, first, it is a true statement, and second,

---

[26] *Cf.* AS 45.50.471(10) (identifying as unfair or deceptive the practice of "making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions").

[27] Docket 355 at 33.

[28] Docket 404-11 (Olsen Dep.) at 27.

[29] *See* Docket 416 (Reply) at 15.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 9 of 33

SAFE has no evidence of causation relating to these statements.[30] SAFE counters that even if Alarm Protection is in some sense a "local" company, the statement is still potentially misleading to customers because much of Alarm Protection's service apparatus is located in Utah.[31]

SAFE points to the Second Circuit's decision in *Harsam Distributors, Inc. v. FTC*, which upheld an FTC cease-and-desist order when the distributor of a perfume made in the United States using a French-made concentrate was advertised as "compounded in France." The Second Circuit reasoned that although the advertising "might well disclose to those familiar with the manufacturing of perfume" that only the concentrate was from France, "such specialized knowledge" could not be "imputed to the average purchaser." The Court of Appeals accordingly upheld the order, since the FTCA "was not made for the protection of experts, but for the public."[32] This is an older case, from a different circuit, under a different statute. And yet the fundamental principle for which it stands— that even true statements can be misleading or deceptive—carries over to this context.[33] Whether Alarm Protection truly is "local," whatever that term might mean, a reasonable

---

[30] *See* Docket 355 at 34–35.

[31] *See* Docket 393 at 23–24.

[32] 596 F.2d 396, 398 (2d Cir. 1959).

[33] *See* 15 U.S.C. § 1125(a)(1) (providing for civil remedies against "any person who . . . uses in commerce any . . . false *or misleading* description of fact" (emphasis added)); *cf. POM Wonderful LLC v. Coca-Cola Co.*, 134 S. Ct 2228, 2233 (2014) (holding that the FDCA did not bar a Lanham Act claim alleging that a "Pomegranate-Blueberry" juice blend was misleadingly labeled because it contained only 0.3% pomegranate juice and 0.2% blueberry juice).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 10 of 33

jury could conclude based on the proffered evidence of Alarm Protection's corporate and service structures that such assurances are "deceptive."[34]

And one customer stated that the fact that Alarm Protection was based in Alaska was a "major point for me," and a point of contrast with SAFE when Alarm Protection's salesperson came by.[35] This is sufficient evidence so as to preclude summary judgment to Alarm Protection on causation.

### 2. Statements that SAFE had service issues in Alaska, resisted cancellation requests or that Alarm Protection's services were "wireless and safer"

Alarm Protection asserts that "claims based on alleged statements relating to whether SAFE has 'local service people,' whether SAFE has 'unscrupulous retention practices,' and whether Alarm Protection is 'wireless and safer' fail because these statements are true and because SAFE cannot show any harm caused by them."[36] SAFE does not address this argument in its opposition; the Court presumes therefore that it lacks evidence of any harm caused by these statements.[37]

### D. Disgorgement under the Lanham Act

Alarm Protection argues that SAFE cannot obtain disgorgement for two reasons. First, Alarm Protection contends that SAFE cannot tie any revenues obtained by SAFE

---

[34] See, e.g., Docket 431 (sealed conventional filing), Ex. 34 to Docket 401 (Kunst Decl.) at 10:30 ("I thought this was all out of Anchorage now."); Docket 431, Ex. 35 to Docket 401 at 3:05 ("When we put this [alarm system] in they said you guys were a local company . . . evidently you're not.");

[35] Docket 431, Ex. 19 to Docket 401 at 1:24 ("When you guys came out and we changed to you from the other one that we were with I got the impression that your services would be here in Alaska . . . but that's not the case, it's from outside of Alaska.")

[36] Docket 355 at 35.

[37] As discussed above, factual truth may not prevent a claim from being misleading.

Case No. 3:13-cv-00102-SLG, SAFE v. Alarm Protection, et al.
Order re Defendants' Motion for Summary Judgment
Page 11 of 33

to the 19 specific customers Alarm Protection believes the claim should be limited to. The Court has already rejected the contention that the Lanham Act claims must be limited to a particular subset of customers, and so it rejects this ground. Second, Alarm Protection contends that Alarm Protection's incontrovertible evidence of its costs show that it did not make any profit from its Alaska operations, including the customers that came from SAFE.[38]

But the asserted "undisputed fact that there has been no profit in Alaska by Alarm Protection" is, in fact, disputed. SAFE has shown evidence of revenues by Alarm Protection.[39] As the parties agree, it is Alarm Protection's burden, then, to negate that profit by showing its expenses.[40] But Alarm Protection has not demonstrated the absence of a genuine dispute; the costs that it asserts negate any revenue were apparently calculated by assigning some portion of Alarm Protection's total costs nationally to Alaska.[41] One such cost was "residual override,"[42] which was assigned based on some percentage (the record excerpts do not disclose either the percentage or the basis for that percentage) to Alaska, but Mr. DeMordaunt testified that he could not say whether all Alaskan salespersons even received such payments.[43] Whether this assignment of

---

[38] *See* Docket 355 at 36–37.

[39] *See* Docket 404-4 (DeMordaunt Dep. Ex. 367) at 8–10.

[40] *See* 15 U.S.C. § 1117(a) ("In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.").

[41] *See* Docket 404-4 at 5–6

[42] The record does not explain what a "residual override" is, but it likely refers to recurring commission payments, akin to a "residual payment."

[43] Docket 404-4 at 5.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 12 of 33

costs to Alaskan operations is accurate is subject to dispute; summary judgment is not warranted.

### E. Trade Secrets Claim

SAFE's trade secret claim requires proof of three elements. SAFE must show that (1) SAFE's trade secret was (2) misappropriated by Alarm Protection, (3) causing damages to SAFE or unjust enrichment of Alarm Protection.[44] Alarm Protection contends that SAFE cannot prove any of these elements.

### 1. Trade Secret

"A trade secret misappropriation claim cannot be established unless the plaintiff had a trade secret that was communicated to the defendant in circumstances giving rise to a duty of secrecy."[45] A trade secret is information that "derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by" an entity's competitors and also "is the subject of efforts . . . to maintain its secrecy."[46] This two-part test requires, first, that the information is "worthy of being kept secret," and second, that it was "actually kept secret."[47] To answer the first inquiry, a court considers, among other factors, "the amount of effort or

---

[44] *See Powercorp Alaska, LLC v. Alaska Energy Auth.*, 290 P.3d 1173, 1187 (Alaska 2012), as amended on reh'g (Jan. 7, 2013); AS 45.50.915(a).

[45] *Powercorp*, 290 P.3d at 1187.

[46] AS 45.50.940(3).

[47] *Powercorp*, 290 P.3d at 1187.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 13 of 33

money expended by [the business] in developing the information," and "the ease or difficulty with which the information could be properly acquired or duplicated by others."[48]

In Alarm Protection's view, the identity of SAFE's customers cannot be a trade secret because that information is not kept secret—SAFE customers put a SAFE sign in their yards—and therefore anyone may properly acquire the information simply by looking for SAFE signs in people's yards.

So far as the Court can discern, and the parties have not indicated otherwise, the Alaska Supreme Court has given no guidance on the circumstances in which a customer list, standing alone, is a protectable trade secret.[49] It may well be within a jury's common experience that people who have already purchased a type of product or service are generally more likely to purchase that same type of product in the future. A cigar salesman may always be on the lookout for new customers, but he will likely sell more cigars to someone who already smokes them. A list of people that are currently paying for alarm services—and thus apparently value the service—would be valuable to someone trying to sell those services because the salesperson could concentrate her time and energy on those prospective customers most likely to become actual customers. The customer list is not just a collection of people and their contact information, but a collection of people who are likely to buy certain services.

But different customer lists have different value. In this regard, the California Supreme Court has differentiated between customer lists in the "retail delivery route"

_____

[48] *Powercorp*, 290 P.3d at 1187 (quoting *Secure Energy, Inc. v. Coal Synthetics, LLC*, 708 F. Supp. 2d 923, 926 (E.D. Mo. 2010)) (alteration in original).

[49] *See, e.g.*, Docket 355 at 38 n.166.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 14 of 33

industry, such as for the provision of pick-up/delivery laundry services, and customer lists in the building maintenance industry. In the first industry, "[t]he names of the customers of a business concern whose trade and patronage have been secured by years of business effort and advertising, and the expenditure of time and money" and are thus protectable trade secrets.[50] But in the second industry, building maintenance, a customer list is not as valuable because prospective customers "are commonly known to the trade or may easily be discovered through business directories or by observation."[51]

Alarm Protection's view is that SAFE's customer list could be obtained in large part simply by driving around Alaskan neighborhoods looking for SAFE signs. SAFE responds that given the wide distribution of its customers, this was not truly feasible.[52] But while it might not be easy to compile such a list, the Court finds that the customer list, standing alone, appears to be ascertainable "by observation," since SAFE's customers display their affiliation with SAFE by signs in their front yards, and that the list of customers, by itself, is thus not a protected trade secret.

However, SAFE claims trade secrets broader than just the identity of its customers. It asserts that valuable information includes of "a combination of [the customers'] identities, their contract information, and their type of equipment."[53] SAFE has produced evidence—admittedly disputed—that Alarm Protection personnel had this type of

---

[50] *See Empire Steam Laundry v. Lozier*, 130 P. 1180, 1183 (Cal. 1913) (quoting *Witkop & Holmes Co. v. Boyce*, 112 N.Y.S. 874, 878 (N.Y. Sup. Ct. 1908)).

[51] *Aetna Bldg. Maint. Co. v. West*, 246 P.2d 11, 15 (Cal. 1952).

[52] *See* Docket 393 at 31; and Docket 402 Exhibits B–J (maps showing cross-over customers).

[53] Docket 393 at 26.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 15 of 33

information.[54]  Alarm Protection maintains that this information is easily gathered "through multiple proper means including neighbors, signs, and the customers themselves."[55]  But obtaining information by questioning people with a SAFE sign in their yard about their and their neighbors' contracts is a far greater undertaking than simply driving neighborhoods with a clipboard.  This type of detailed information is precisely the type of customer information that courts routinely consider a trade secret.[56]

### 2. Misappropriation

The trade secret claim requires SAFE to prove "misappropriation," which means the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or the "use of a trade secret of another without express or implied consent by a person who [] used improper means to acquire knowledge of the trade secret."  The Alaska statute defines "improper means" to include "breach or inducement of a breach of a duty to maintain secrecy."[57]

Alarm Protection presents evidence in the form of two (essentially identical) declarations by its employees who attest that they did not use any confidential information obtained from SAFE or Pinnacle.[58]  Alarm Protection is correct that SAFE has not

---

[54] *E.g.*, Docket 401-1 at 6 (Schanz Dep.) (discussing SAFE's equipment's cellular technology); Docket 431 (sealed conventional filing), Ex. 44 to Docket 401 (Kunst Decl.) at 8:45 (customer explaining that his buyout amount has "been explained to me as 225 dollars, otherwise I have no clue").

[55] Docket 355 at 39.

[56] *Cf. W. Medical Consultants, Inc. v. Johnson*, 80 F.3d 1331, 1337–38 (9th Cir. 1996) (discussing distinctions for trade secret designation for different types of customer information).

[57] *See generally Powercorp*, 290 P.3d at 1190 (quoting AS 45.50.940).

[58] *See* Docket 364 (Valentine Decl.) at 3 ¶¶ 7–8; Docket 366 (Jesclard Decl.) at 3, ¶¶ 7–8.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 16 of 33

presented any *direct* evidence—such as testimony from those same or other employees—that Alarm Protection personnel were using proprietary information. But SAFE has compelling circumstantial evidence: First, both of those employees were previously employed by Pinnacle.[59]  Second, these employees knew details about customer's contracts that were not readily ascertainable.[60]  Third, SAFE lost nearly 258 customers it acquired from Pinnacle to Alarm Protection within months of acquiring them.[61]

While this is all circumstantial evidence, it is nonetheless substantial evidence.  If, at trial, the jury disbelieves the employees' testimony,[62] and accepts SAFE's evidence offered above, it could reasonably conclude that these employees had proprietary information about SAFE's customers and their contracts and used this information in their solicitation of those customers.

---

[59] *See* Docket 404-1 at 67–68 (Jesclard Dep.); Docket 404-14 at 149 (Valentine Dep.).

[60] *See* Docket 404-1 at 578, Ex. 44 (audio recording) at 8:45 (buyout amount); Docket 404-5 (Withrow Dep.) at 7 (stating that Alarm Protection's sales representative had a copy of Withrow's Pinnacle contract).  Alarm Protection contends that Withrow rescinded this statement, *see* Docket 355 at 41, but while Mr. Withrow did caveat that he wasn't sure the document was his contract, he did testify that he saw a document in the sales representative's notebook containing the Pinnacle heading, *see* Docket 362-8 at 10.

[61] *See* Docket 404-16 (identifying cross-over customers).

[62] The Court notes Sarah Ratcliffe's declaration stating that all SAFE customers received the same SAFE sign at approximately the same time.  Docket 403 at 3, ¶ 11.  This would seem to undermine the employees' statements in their own declarations that they could discern contract age and equipment type from the age of the sign.  *See* Docket 364 at 2, ¶ 4; Docket 366 at 2, ¶ 4.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 17 of 33

### 3. Causation and Damages

SAFE can recover on its trade secret claim only if it establishes damages or unjust enrichment were caused by the misappropriation.[63]  Alarm Protection contends that SAFE has "no evidence or expert testimony as to damages allegedly arising from any misappropriation."[64]  But this is not a complex medical or scientific case that would require SAFE to produce an expert to establish legal or proximate causation; summary judgment on this basis is unwarranted.  And specifically with respect to the determination of the amount of damages, the Court declines to grant summary judgment on this issue to Alarm Protection.  While SAFE will be required at trial to prove its damages by a preponderance of the evidence, it has presented sufficient evidence of some damage, albeit disputed, to survive summary judgment.[65]

### F.  Defamation Per Se

SAFE's defamation per se claim requires showing that Alarm Protection negligently made a false statement about SAFE's business to third parties, that those third parties would understand the statements to be about SAFE, and that the statement was "so unambiguous as to be reasonably susceptible of only one interpretation—that is, one which has a natural tendency to injure another's reputation."[66]

---

[63] AS 45.50.915(a).

[64] Docket 355 at 43.

[65] *Cf. Total Care Physicians, P.A. v. O'Hara*, 2003 WL 21733023 at *3–4 (Del. Super. Ct. July 10, 2003).

[66] *Greene v. Tinkler*, 332 P.3d 21, 39 n.72 (Alaska 2014) (quoting *Alaska Statebank v. Fairco*, 674 P.2d 288, 295 n.15 (Alaska 1983)).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 18 of 33

Alarm Protection argues that many of the statements it is alleged to have made cannot support this claim. In Alarm Protection's view, only the alleged statements that "SAFE is going out of business or is out of Alaska" could support a defamation per se claim.[67] SAFE argues that statements that SAFE has "no service people in Alaska" are also defamatory per se. The Court agrees, as having no personnel in Alaska would imply that SAFE was unable to service its alarms in Alaska, which if true would "adversely affect [SAFE's] fitness for the proper conduct of [its] lawful business, trade, or profession."[68] But Alarm Protection responds that this statement was true. Alarm Protection has presented substantial evidence that indicates SAFE service technicians were unavailable in many areas.[69] And SAFE has not pointed the Court to any evidence to demonstrate a genuine dispute on this topic.[70] Accordingly, the Court concludes that Alarm Protection is entitled to summary judgment on SAFE's defamation claims based on statements that SAFE did not have service people in Alaska.

Alarm Protection also argues that SAFE's recovery must be limited to damages related to the specific customers and statements that SAFE has identified. SAFE counters that the jury can infer that the statements were made to all of SAFE's customers that it lost to Alarm Protection.[71] SAFE cites to a Fifth Circuit case for this proposition.[72]

---

[67] Docket 355 at 45–46.

[68] *Greene*, 332 P.3d at 39 (quoting Restatement (Second) of Torts § 573).

[69] *See, e.g.*, Docket 362-2 at 6, 8, 12, 15

[70] *See* Docket 393 at 35–36 (discussing this issue).

[71] *See* Docket 393 at 36.

[72] Docket 393 at 36 (citing *College Network, Inc. v. Moore Educ. Publishers, Inc.*, 378 Fed. App'x

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 19 of 33

In that case there was evidence that the person responsible for training the salespersons told all the salespersons to tell potential customers that the competitor was going out of business,[73] and several of those salespersons testified that they did make the statements, including one who testified that she made the statements to hundreds of potential customers.[74]

In SAFE's motion for summary judgment, which this order does not directly address, it argued that Alarm Protection could not prove damages arising from any defamation because each of the customers to whom SAFE allegedly defamed Alarm Protection is still an Alarm Protection customer.[75]  In response, Alarm Protection argued that it could present the recordings of the statements made to these four customers and the jury could infer from those statements that SAFE had made the same statements to others.[76]  Alarm Protection has not explained its apparent inconsistency on this issue.[77] Given Alarm Protection's view in support of its own defamation claims, the Court will deny its motion for summary judgment on this issue.

---

403, 405 (5th Cir. 2010)).

[73] *College Network*, 378 Fed. App'x at 405.

[74] *Id.* at 410.

[75] Docket 339 at 17–18.

[76] *See* Docket 396 at 8–9.

[77] Alarm Protection points out that SAFE had to circulate a policy memorandum reminding its employees not to make such statements.  *See* Docket 396 at 8.  But Alarm Protection began asking new customers whether its salespersons had suggested SAFE was going out of business. *See* Docket 401-1 at 578 (Ex. 44) (audio recording) at 8:16 ("Did your security consultant at any time state or imply that SAFE has gone or is going out of business?").

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 20 of 33

*G. Defamation Per Quod*

Alarm Protection contends that SAFE's defamation per quod claims—claims for which SAFE must show specific damages caused by the statements—also fail for various reasons. Chief among them for purposes of this order is that SAFE does not demonstrate any triable issues of fact as to this claim except as to statements that indicated that SAFE was going out of business.[78] As discussed above, the Court agrees, and will grant partial summary judgment to Alarm Protection on SAFE's defamation claims—per se and per quod—and will allow those claims to proceed only with respect to the alleged statements that SAFE was going out of business.

*H. Intentional Interference with Contract*

The parties agree that the elements of SAFE's contract interference claims are (1) the existence of a contract; (2) the defendant's awareness of the contract; (3) breach of the contract; (4) causation; (5) damages; and (6) the defendant's actions were not privileged.[79] Alarm Protection asserts that SAFE cannot show the existence of a contract, causation, damages, or lack of privilege.

*1. Existence of a contract*

Alarm Protection claims that the contracts Pinnacle first obtained violated Alaska law governing the revocation period for door-to-door sales because they did not provide written notice of the statutory five-day right of rescission.[80] Alarm Protection's attorney

---

[78] *See* Docket 393 at 35–37.

[79] *See* Docket 355 at 47; Docket 393 at 32. Both parties cite to *Kinzel v. Discovery Drilling, Inc.*, 93 P.3d 427, 443 (Alaska 2004).

[80] *See* Docket 355 at 47–48 (citing AS 45.02.350).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 21 of 33

stated in his declaration that he "personally reviewed every Pinnacle contract," that "[e]ach of these contracts produced by SAFE in this matter contain a three day right of rescission," and that he had "not seen a single Pinnacle contract produced by SAFE in this matter that contains a five day right of rescission."[81] Given the declarant's certainty and asserted thoroughness, the Court was truly surprised to find that the very first contract in the supporting exhibit contained a five-day right of rescission.[82] So does the third.[83] In SAFE's opposition it attached forty more.[84] The Court also notes that at least some of the forms containing three-day rights of rescission terms are for commercial premises,[85] to which the applicable statute does not apply.[86] Given that the available evidence does not remotely support Alarm Protection's contention that "every single Pinnacle contract at issue lacks a five-day rescission term,"[87] the Court will not grant summary judgment to Alarm Protection on this issue.

Moreover, as SAFE points out in opposition, Alarm Protection is not permitted to wrongfully interfere with a contract merely because the contract may be voidable by one

---

[81] Docket 362 (Hull Decl.) at 4, ¶ 20.

[82] Docket 362-9 at 1.

[83] Docket 362-9 at 4. The second and the fourth contract are actually the same contract, *compare* Docket 362-9 at 2 *with* Docket 362-9 at 6, and were made with the same person who also signed the first and third contract, which contained the five-day right of rescission, on the same day.

[84] *See* Docket 404-17.

[85] Docket 362-9 at 10–11.

[86] *See* AS 45.02.350(c)(5).

[87] Docket 355 at 48.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 22 of 33

of the parties to it.[88]   Alaska law provides that a contract "for the purchase of goods or services . . . from a person soliciting a door-to-door sale shall require, as a condition of taking effect, that the purchaser may revoke the offer to buy within five business days of entering into the contract, and that the seller, at the time of the sale, give the purchaser written notice of the right to revoke."[89]   The parties have pointed to no cases interpreting this statute, and the Court discovered none on its own, but the Court finds it unlikely that the Alaska legislature intended this statute to give a third party, such as Alarm Protection, the right to wrongfully interfere with a contract that fails to provide such written notice.   It is a consumer protection statute, and consumers are not protected by a competitor's wrongful interference with their existing arrangements.

### 2. Causation

For its intentional interference with contract claim, SAFE must prove that Alarm Protection's wrongful conduct was a "material and substantial" cause of the breach of contract.[90]   Alarm Protection asserts that SAFE cannot prove this element because "there is evidence before the Court showing that many customers in Alaska were cancelling because of bad service or for many other reasons," and that "SAFE lacks evidence demonstrating that this alternative causation is not the cause of customers leaving."[91]   In *Knight*, the case on which Alarm Protection relies, the contract at issue was terminated

---

[88] *See* Docket 393 at 33 (citing Restatement (Second) of Torts § 766 cmt. f).

[89] AS 45.02.350(a).

[90] *Knight v. Am. Guard & Alert, Inc.*, 714 P.2d 788, 794 (Alaska 1986).

[91] Docket 355 at 48.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 23 of 33

before the alleged interferer had even communicated with the breaching party. Thus, necessarily, that communication could not have been a cause of the breach.[92]

The evidence as to the cause of cancellations is far from undisputed, and summary judgment on this basis is unwarranted.

### 3. Damages

Alarm Protection asserts that SAFE cannot show any damages from any alleged interference. But if SAFE shows that Alarm Protection caused its customers to breach their contracts, then SAFE has been damaged to the extent of the breach—the loss of the benefits of the contract or other consequential harms.[93] Alarm Protection may argue that these damages are small, or mitigated by buy-out amounts, but they are not entitled to summary judgment on SAFE's damages: the contracts themselves are evidence of a possible measure of damages.

### 4. Privilege

"The sixth element of the intentional interference tort, that the interferer's conduct not be privileged, is troublingly vague."[94] But as Alarm Protection recognizes, SAFE can prevail on this element by showing that "Alarm Protection used improper means to achieve its objective."[95] Alarm Protection asserts that "the only possible 'improper means' arguably identified by SAFE are the alleged torts that SAFE brings as independent causes

---

[92] *Knight*, 714 P.2d at 793.

[93] *See* Restatement (Second) of Torts § 774A(1).

[94] *RAN Corp. v. Hudesman*, 823 P.2d 646, 648 (Alaska 1991).

[95] Docket 355 at 48 (citing Alaska Civil Pattern Jury Instr. 19.03).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 24 of 33

of action," and that if those claims are dismissed, so must SAFE's tortious interference claim.[96] This is not self-evident; some of SAFE's claims may fail for reasons independent of the "properness" of Alarm Protection's conduct. For example, statements that Alarm Protection was taking over SAFE may not be defamatory, but they still might give rise to an intentional interference claim. In any event, for the reasons given above, the Court will not grant summary judgment to Alarm Protection on all of SAFE's claims, and thus, Alarm Protection is not entitled to summary judgment on the intentional interference claim on this basis.

SAFE is also correct that "spite, malice, or some other improper objective" become relevant only after it is established that Alarm Protection had a "*direct* financial interest" in the contract.[97] In its reply brief, Alarm Protection cites the Alaska Pattern Jury Instructions and the Restatement (Second) of Torts to argue that a competitor has a sufficient interest to privilege interference. But as the pattern jury instructions recognize, Alaska courts have thus far recognized only two valid interests: direct economic interests and safety interests. Competition is not a direct economic interest under Alaska law. In *Bendix*, the interfering party was a parent company of the breaching party.[98] In *RAN Corp.*, the interfering party was the landlord of the party attempting to assign a lease.[99] And in *Kinzel*, the interfering party was the primary contractor allegedly interfering with a

---

[96] Docket 355 at 49.

[97] *RAN Corp.*, 823 P.2d at 648 (citing *Bendix v. Adams*, 610 P.2d 24, 31 (Alaska 1980)) (emphasis added).

[98] *See id.* at 649.

[99] *Id.* at 649.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 25 of 33

contract of its subcontractor.[100]   In each case, the interfering party had a preexisting interest in the subject of the contract.[101]

As Alarm Protection implicitly recognizes in its reply brief, the fact that Alarm Protection has a competitor's interest merely reverts to the question of whether the "means were wrongful"—that is, that Alarm Protection used "improper means."[102]  Alarm Protection does not have a "direct" financial interest in the contracts at issue here, and thus SAFE is not required to show "spite, malice, or some other improper objective."[103]

### I. Website-based Lanham Act Claim

SAFE's Lanham Act claim includes an allegation that one of Alarm Protection's websites, www.aptsafe.com, infringed on SAFE's trademark and that Alarm Protection's primary website infringed on the same trademark by using the word "safe" in text describing Alarm Protection's services and in its metadata.[104]  Alarm Protection argues that there is no evidence of a likelihood of consumer confusion to support this claim, and that SAFE cannot show irreparable harm sufficient to award an injunction or any profits sufficient to award disgorgement.

---

[100] *Kinzel*, 93 P.3d at 444.

[101] The Court also notes that Alarm Protection's position on this issue with regard to this motion is in some tension with the position it takes in its opposition to SAFE's motion for partial summary judgment.  *See* Docket 396 (Alarm Protection's Opp. to SAFE's Mot. for Summ. J.) at 19.

[102] *See* Docket 416 at 23.

[103] *See* Restatement (Second) of Torts § 768.

[104] *See* Docket 301 (FAC) at 5, ¶ 16(a).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 26 of 33

*1. Likelihood of Confusion*

Likelihood of confusion turns on the eight *Sleekcraft* factors: (1) the strength of the mark; (2) relatedness of the companies' services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the degree of care likely to be used by purchasers; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion into other markets.[105]  None of these factors is dispositive, and the list is not exhaustive.  Indeed, the factors are "not meant to be requirements that a district court need jump through to make the determination" that there is a likelihood of confusion.

Alarm Protection contends that only one of these factors—the relatedness of the companies' services—weighs in favor of SAFE's claim, and that therefore summary judgment is appropriate.[106]  SAFE argues that other factors either do in fact weigh in its favor or else are subject to a factual dispute precluding summary judgment.[107]

The Court first notes that although Alarm Protection's general argument is based on its websites, there are in fact three distinct claims here.  First, there is the claim as it relates to the domain name www.aptsafe.com.  Second, there is the claim based on the use of the word "safe" in textual sentences on Alarm Protection's website.  Third, there is a claim based on the use of the word "safe" in Alarm Protection's website metadata.

---

[105] *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)).

[106] Docket 355 at 50.

[107] Docket 393 at 39–41.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 27 of 33

As to the domain name, the Court agrees with SAFE that this issue is inappropriate for summary judgment.[108]  The fundamental question a jury is charged with deciding in a Lanham Act trademark infringement claim is whether "the defendant used [the plaintiff's mark or a mark similar to the plaintiff's mark] without the consent of the plaintiff in a manner that is likely to cause confusion among ordinary consumers as to the source, sponsorship, affiliation, or approval of the goods."[109]  Although the jury will be instructed to consider several factors, "[t]he list of factors is not a score-card—whether a party 'wins' a majority of the factors is not the point."[110]  Accordingly, the jury will also be instructed that "[t]he presence or absence of any particular factor . . . should not necessarily resolve whether there was a likelihood of confusion, because you must consider all relevant evidence in determining this."[111]

The Court finds that a reasonable jury could conclude that consumers would likely be confused by Alarm Protection's use of the www.aptsafe.com domain name.  Especially in conjunction with evidence suggesting that at least some former SAFE customers—now Alarm Protection customers—were confused about the affiliation between SAFE and

---

[108] *See JL Beverage Co., LLC v. Jim Beam Brands Co.*, 828 F.3d 1098, 1105 (9th Cir. 2016) ("Because the determination is based on a non-exhaustive, multi-factor, fact-intensive inquiry, we have cautioned against granting summary judgment in these cases."); *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1265 (9th Cir. 2001) (noting that likelihood of confusion is an inherently factual question rarely decided on summary judgment).

[109] Ninth Cir. Model Jury Instr. 15.6.

[110] *Thane Int'l, Inc. v. Trek Bicycle Corp.*, 305 F.3d 894, 901 (9th Cir. 2002).

[111] Ninth Cir. Model Jury Instr. 15.6; *see also Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 631 (9th Cir. 2005) ("The test is a fluid one and the plaintiff need not satisfy every factor, provided that strong showings are made with respect to some of them.").

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 28 of 33

Alarm Protection,[112] the jury might conclude that an ordinary consumer faced with this information might perform a quick search on his or her smart phone, for example, and find this domain name to indicate that, indeed, the two companies were affiliated. Contrary to Alarm Protection's assertion that "there is no evidence whatsoever that Alarm Protection uses the term 'safe' to identify its product or company," the use of the word "safe" in the website's domain name, next to Alarm Protection's own commonly used abbreviation, may do exactly that.[113]   And as Alarm Protection recognizes, the two companies offer identical services.  Given that at least two factors weigh at least generally in SAFE's favor, the Court will not grant summary judgment on this issue.

Unlike the allegations related to the domain name, the mark "safe" as used on Alarm Protection's website in text describing its services is not sufficiently similar to SAFE's mark "SAFE."  Given that the only factor that clearly weighs in SAFE's favor is the fact that it competes with Alarm Protection, the Court concludes that no reasonable jury could find for SAFE on this aspect of the website claim.  The Court will therefore grant summary judgment in favor of Alarm Protection on this issue.

---

[112] *See, e.g.*, Docket 431, Exhibit 20 to Docket 401 at 3:13 ("I can't remember exactly when the guy showed up here that day, said they'd bought out SAFE or whatever.  Did you guys buy out SAFE or what? . . . What caused me to get my system changed here? . . . I got the impression the day that the guy showed up here, I mean he just out of the clear blue sky walked in here one day and says, you know, we're taking over the system here and I figured well he's buying, they bought it out.").

[113] *Cf. Brookfield Commc'ns, Inc. v. West Coast Ent't Corp.*, 174 F.3d 1036, 1055 (9th Cir. 1999) (noting that capitalization is "inconsequential in light of the fact that Web addresses are not caps-sensitive" and that "moviebuff.com" is "essentially identical" to the mark "MovieBuff").

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 29 of 33

Finally, with regard to the metadata, the Court will deny the motion for summary judgment without prejudice to renew following the Court's adjudication of the motion regarding SAFE's expert witness Glen Klinkhart.[114]

### 2. Evidence of Irreparable Harm

There is no real denying that SAFE has lost market share to Alarm Protection, at least in Alaska. SAFE has not shown that any portion of this has been specifically caused by Alarm Protection's website, but the use of the website is, according to SAFE, merely a part of an overall scheme to create customer confusion. The Court will determine whether the equitable remedy of an injunction is warranted at the appropriate time, after trial has established the relevant facts.

### 3. Evidence of Profits

Alarm Protection argues that SAFE cannot show that any of its lost customers are "attributable to the infringing conduct" on the website.[115] SAFE did not directly respond to Alarm Protection's argument that SAFE cannot point to revenue or profits related directly to Alarm Protection's website. SAFE still has a broader Lanham Act claim, and, as discussed above, has met its burden for purposes of summary judgment to show some revenues with regard to that claim.[116] In *Lindy Pen Co. v. Bic Pen Corp.*, the district court concluded that there was no likelihood of confusion arising from the defendant's use of

---

[114] *See* Docket 298 (Alarm Protection's Mot. Under Rule 702 to Exclude Expert Testimony of Glen Klinkhart).

[115] Docket 355 at 56 (quoting *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2015 WL 3407882 at *5 (W.D. Wash. May 27, 2015)).

[116] *See supra* Section III.D.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 30 of 33

the plaintiff's mark except in "telephone order sales."[117]  But the Ninth Circuit affirmed the district court's conclusion that the plaintiff was not entitled to damages because it had failed to separate out that portion of the defendant's sales that could be attributed to telephone sales.  Similarly, SAFE has offered no evidence that would attribute any subsection of the customers Alarm Protection gained from SAFE to Alarm Protection's website.  The Court finds that no claim for either unjust enrichment or actual losses can be based on the website.

### J.  Inability to prove damages

Alarm Protection contends, finally, that having excluded SAFE's damages expert, John Brady, SAFE cannot prove any damages.[118]  SAFE counters that "the Ninth Circuit has expressly rejected the assertion that expert testimony is required to establish damages under the Lanham Act."[119]  The Court agrees with SAFE.  In *Skydive Arizona, Inc. v. Quattrocchi*, the Ninth Circuit affirmed a damages award even in the absence of "a specific mathematical formula for the jury to use in calculating actual harm" to the plaintiff.[120]  The Circuit Court noted that there was ample non-expert evidence relating to "the original value of [the plaintiff's] goodwill" and that the damages section of the Lanham Act "demands neither empirical quantification nor expert testimony to support a monetary award of actual damages" because "many sources can provide the requisite information

---

[117] *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1993) *overruled on other grounds*, *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179 (9th Cir. 2016).

[118] Docket 355 at 57.

[119] Docket 393 at 11.

[120] 673 F.3d 1105, 1112 (9th Cir. 2012).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 31 of 33

upon which a reasonable jury may calculate damages."[121]  SAFE seeks to recover under the same statute, and the Court can discern no reason to hold a Lanham Act plaintiff to a higher standard when the claim rests on general unfair trade practices or trademark infringement, as opposed to false advertising.

## CONCLUSION

For the foregoing reasons, IT IS ORDERED that Alarm Protection's Motion for Summary Judgment at Docket 351 is GRANTED IN PART and DENIED IN PART.

The motion is GRANTED as follows:

- Alarm Protection's alleged use of cancellation letters and buy-out checks cannot form the basis of SAFE's Lanham Act or UTPA claims.

- Alarm Protection's alleged statements relating to SAFE's service issues or SAFE's alleged practice of resisting cancellation requests cannot form the basis of SAFE's Lanham Act or UTPA claims.

- Alarm Protection's alleged statements that its services are "wireless" and "safer" cannot form the basis of SAFE's Lanham Act or UTPA claims.

- Only Alarm Protection's alleged statements that SAFE was going out of business can form the basis of SAFE's defamation claims.

- Alarm Protection's use of the word "safe" on its website in text describing its services cannot support SAFE's Lanham Act claim.

- A Lanham Act violation arising from Alarm Protection's website, if there is one, cannot be the basis of SAFE's damages or lost profits.

The motion for summary judgment is denied in all other respects.  Following the Court's determination of Alarm Protection's motion at Docket 298 regarding the testimony

---

[121] *Id.* at 1112–13 (citing 22 U.S.C. § 1117).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 32 of 33

of Glen Klinkhart, Alarm Protection may move to renew the motion for summary judgment solely with regard to claims based on website metadata.

DATED this 3rd day of February, 2017 at Anchorage, Alaska.

_/s/ Sharon L. Gleason_
UNITED STATES DISTRICT JUDGE

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Defendants' Motion for Summary Judgment
Page 33 of 33