# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SECURITY ALARM FINANCING ENTERPRISES, L.P., a California Limited Partnership,<br><br>Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>ALDER HOLDINGS, LLC, a Utah Limited Liability Company; ALARM PROTECTION TECHNOLOGY, LLC, a Utah Limited Liability Company; ALARM PROTECTION TECHNOLOGY ALASKA, LLC, a Utah Limited Liability Company; ALARM PROTECTION ALASKA, LLC, a Utah Limited Liability Company,<br><br>Defendants and Counterclaimants. | Case No. 3:13-cv-00102-SLG |

## ORDER RE COUNTERCLAIM DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

Before the Court is Plaintiff and Counterclaim Defendant SAFE's Motion for Summary Judgment at Docket 337. The motion is fully briefed,[1] and oral argument was held on December 15, 2016.[2] Defendants'[3] motion at Docket 351 for summary judgment on SAFE's claims has been addressed in a separate order.[4]

---

[1] *See* Docket 339 (Unredacted Mem.); Docket 396 (Opp.); Docket 413 (Reply).

[2] *See* Docket 445 (Hr'g Mins.).

[3] The Court will refer to Defendants Alder Holdings, Alarm Protection Technology, Alarm Protection Technology Alaska, and Alarm Protection Alaska collectively as either "Defendants" or "Alarm Protection."

[4] *See* Docket 520.

## BACKGROUND

This is a dispute between two home alarm security companies. Many of the pertinent facts are summarized in the Court's recent order on Alarm Protection's motion, and are not repeated here.[5] The following additional facts are drawn from Alarm Protection's Answer to Amended Complaint and Counterclaim.[6]

In response to SAFE's concerns about Alarm Protection's potential poaching of SAFE's customers, Alarm Protection conducted its own internal investigation. Alarm Protection maintains that as a result of that investigation, it learned that SAFE had been calling SAFE's past customers that were now Alarm Protection customers—presumably as part of SAFE's investigation. According to Alarm Protection, SAFE told at least some of these customers that Alarm Protection was engaging in illegal activity and was defrauding its customers.[7] These alleged statements by SAFE to Alarm Protection's customers form the basis of Alarm Protection's counterclaims, which are the subject of this order. SAFE largely denied all of these allegations, and denied that Alarm Protection was entitled to any relief.[8]

---

[5] *See* Docket 520 (Order) at 1–2.

[6] Docket 325.

[7] Docket 325 at 8–9.

[8] *See* Docket 20 at 2.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 2 of 15

**DISCUSSION**

**I. Jurisdiction**

The Court has supplemental jurisdiction over each of Alarm Protection's counterclaims pursuant 28 U.S.C. § 1367 because each shares some "common nucleus of operative fact" with SAFE's Lanham Act claim, over which the court has original jurisdiction pursuant to 28 U.S.C. § 1331.[9]

**II. Standard for Summary Judgment**

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court's recent order on Alarm Protection's Motion for Summary Judgment set out the controlling precedent for a trial court to apply when considering a motion for summary judgment.[10] That precedent is not restated here, but is again relied upon by the Court.

**III. Analysis**

Alarm Protection has asserted the following five counterclaims: (1) Tortious Interference with Contractual Relationship; (2) Tortious Interference with Business Relationship; (3) Defamation Per Se; (4) Defamation Per Quod; and (5) Violation of Alaska's Unfair Trade Practices Act (UTPA), AS 45.50.471. SAFE moves for summary judgment on all of these counterclaims.

---

[9] The Court has insufficient information to determine the citizenship of the parties for diversity purposes. Plaintiff is a limited partnership, but the Court cannot discern who its partners are and where they are citizens. Defendants are four LLCs, but the Court cannot discern who their members are and where they are citizens.

[10] Docket 520 at 3–4.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 3 of 15

SAFE's primary argument is that Alarm Protection's claims—with the exception of the defamation per se claim—cannot stand because Alarm Protection has no evidence that it has suffered any damages.[11] SAFE also argues that, for various reasons, Alarm Protection cannot prove the essential elements of its defamation per se claim.[12] And SAFE asserts that it was privileged to interfere with Alarm Protection's contracts with SAFE's former customers.[13] The Court will address each argument in turn.

*A. Damages*

In Alaska, each of the torts of interference with contract, interference with prospective business relationship, defamation per quod, and the UTPA requires a plaintiff to show actual damages to win monetary relief.[14] Here, SAFE maintains that Alarm Protection has identified only four statements in discovery to support its claims. One of these statements was to an Alarm Protection employee who still works for Alarm Protection and the other three were to Alarm Protection customers who apparently have not cancelled their services with Alarm Protection.[15]

---

[11] Docket 339 at 17–19.

[12] Docket 339 at 19–24.

[13] Docket 339 at 24–25.

[14] *See Oaksmith v. Brusich*, 774 P.2d 191, 198 (Alaska 1989) (identifying damages as an essential element of both interference with prospective business relationships and interference with contract claims); *Alaska Statebank v. Fairco*, 674 P.2d 288, 295 (Alaska 1983) ("[E]vidence of specific harm suffered must be adduced if the statement is not defamatory on its face."); *Garrison v. Dixon*, 19 P.3d 1229, 1235 n.22 (Alaska 2001) (affirming award of full attorney's fees to UTPA defendant who prevailed on summary judgment because "plaintiffs could show no monetary losses, as required for a private action under AS 45.50.531(a)"); *see also* Alaska Civil Pattern Jury Instrs., § 19.01A (interference with contract); § 19.01B (interference with prospective economic advantage); § 16.03 (defamation per quod); § 10.01A (UTPA).

[15] *See* Docket 339 at 12–14. There, SAFE explained that Alarm Protection did not produce any contracts when asked to produce "all documents, including, but not limited to, all contracts,

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 4 of 15

Alarm Protection responds that SAFE's contention that "Alarm Protection cannot show damages caused by the few statements that SAFE preserved" is "true so far as it goes."[16] But in Alarm Protection's view, it does not go very far. Alarm Protection maintains that SAFE's spoliation of its customer call recordings[17] has prevented Alarm Protection, and the Court, from knowing "how many other Alarm Protection customers heard the same false statements from SAFE and decided to cancel their contracts."[18] The Court agrees that the spoliation might make it difficult, perhaps very difficult, to ascertain to whom SAFE made any improper statements. And for this reason, the Court awarded sanctions against SAFE, including the sanction of instructing the jury that it may consider the fact of the spoliation in reaching its verdict.[19]

Alarm Protection contends that because of this spoliation and the possibility that the jury will infer that the spoliated material was favorable to Alarm Protection's claims, the Court must deny summary judgment. Alarm Protection points to the Second Circuit's decision in two cases, *Byrnie v. Cromwell*[20] and *Kronisch v. United States*,[21] to support

---

correspondence, audio recordings and payment histories, relating to any and all customers that [Alarm Protection] allege[s] to have cancelled their account based on any action taken by SAFE." *See* Docket 358 (Alarm Protection's Interrogatory Responses) at 4.

[16] Docket 396 at 7.

[17] *See* Docket 429 (Order re Mot. for Spoliation Sanctions) at 8–9 (discussing the loss of these recordings).

[18] Docket 396 at 7.

[19] *See* Docket 429 at 16.

[20] 243 F.3d 93 (2d Cir. 2001).

[21] 150 F.3d 112 (2d Cir. 1998).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 5 of 15

this position. In *Byrnie*, the Second Circuit, citing *Kronisch*, explained that "a party seeking an adverse inference may rely on circumstantial evidence to suggest the contents of destroyed evidence" and that once this is done, "[i]t then becomes a matter for the jury to decide, based on the strength of the evidence presented, whether the documents likely had such content."[22]

The lost recordings might have been highly probative in proving that SAFE made defamatory statements about Alarm Protection, or attempted to interfere in Alarm Protection's contracts or business relationships, or engaged in some sort of deceptive practice. Because SAFE failed to preserve those recordings even in the face of an obligation to do so, the jury might infer that the recordings were favorable to Alarm Protection.[23] Thus, Alarm Protection is correct that the mere fact that the three customers for whom it has recordings have not left Alarm Protection does not preclude Alarm Protection from showing damages related to other customers, because "a reasonable jury [could] conclude that the destroyed recordings would contain more of the same: defamatory statements by SAFE . . . ."[24]

But the spoliation, and any inference that may be drawn from it, gets Alarm Protection only so far. Alarm Protection bears the burden at trial of proving both SAFE's conduct and Alarm Protection's damages. The potential inference allows Alarm

---

[22] *Byrnie*, 243 F.3d at 110.

[23] *See, e.g., Medical Lab. Mgmt. Consultants v. ABC, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (explaining that an inference may be available if the spoliation "indicated that the [evidence] threatened [the spoliating party's] legal position and needed to be covered up").

[24] Docket 396 at 8.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 6 of 15

Protection to avoid summary judgment as to SAFE's conduct—the jury could infer that there was additional conduct for which there is not direct evidence. But the recordings that were spoliated would not contain evidence about Alarm Protection's damages.[25] That evidence would have to come from some other source—such as Alarm Protection's own records. Indeed, as the Court of Appeals explained in *Bynrie*, "[t]he burden falls on the 'prejudiced party' to produce 'some evidence suggesting that a document or documents relevant to substantiating his claim would have been included among the destroyed files.'"[26] Alarm Protection gives no reason to believe that there would be any evidence of its damages on the spoliated recordings. No reasonable jury could infer that the phone recordings contained evidence of Alarm Protection's damages, and so Alarm Protection cannot rely on the spoliation to escape its burden to produce evidence of such damages.[27]

Because Alarm Protection concedes that it has no actual evidence that it incurred any damages as a result of SAFE's conduct, the Court will grant SAFE's motion for summary judgment with regard to Alarm Protection's claims for interference with contract, interference with prospective business relationship, defamation per quod, and violations of the UTPA, each of which requires a showing of damages.[28]

---

[25] *Cf. Kronisch*, 150 F.3d at 127 (explaining that once a court finds spoliation occurred, it must consider "the likely contents of that evidence").

[26] *Byrnie*, 243 F.3d at 108 (quoting *Kronisch*, 150 F.3d at 128).

[27] *See Medical Lab. Mgmt.*, 306 F.3d at 825 (noting, in a parenthetical, that "when a party 'has produced no evidence—or utterly inadequate evidence—in support of a given claim', 'the destruction of evidence, standing alone, is [not] enough to allow [the] party ... to survive summary judgment on that claim'" (quoting *Kronisch*, 150 F.3d at 128) (alterations and omission in original)).

[28] Alarm Protection also sought injunctive relief. *See* Docket 325 (Amended Answer) at 14. In

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 7 of 15

*B. Defamation per se*

Defamation per se requires proof of four elements: (1) a false and defamatory statement; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) the existence of per se actionability.[29] SAFE asserts that none of the four statements for which Alarm Protection has a recording can satisfy these four elements. Alarm Protection counters that for the three statements SAFE made to customers, such elements are disputed. Alarm Protection also maintains that it can base its defamation per se claim on other statements for which the recordings were spoliated. At oral argument, Alarm Protection acknowledged that the statements SAFE made to Alarm Protection's representative cannot support a claim of defamation per se because those statements were not a "publication to a third party."[30] Accordingly, the Court will not address the statements to Mr. Jesclard. SAFE raises several points on which it seeks summary judgment on Alarm Protection's claim. The Court will address each in turn.

---

Alaska, a UTPA claim for injunctive relief can proceed even without a showing of actual damages. *See* AS 45.50.535(a) (authorizing "any person who was the victim of the unlawful act, whether or not the person suffered actual damages" to "bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice declared unlawful").

[29] *See DeNardo v. Bax*, 147 P.3d 672, 678 (Alaska 2006).

[30] *See, e.g.*, *Eggleston v. Klemp*, 295 Fed. App'x 233, 234 (9th Cir. 2008) ("Publications made to agents of the complaining party will not support an action for defamation when the complaining party or his agents induced the publication.").

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 8 of 15

*1. The Smith Call*

SAFE contends that the statements made to Philip Smith[31] are not defamatory because they are not clearly about Alarm Protection.[32] It is true that SAFE's representative did not mention Alarm Protection by name, but the reference to "aggressive door-to-door salesmen" closely followed Mr. Smith's statement that Alarm Protection salesmen had been by his house.[33] There is at the very least a genuine dispute as to whether this statement was about Alarm Protection; the Court will not grant summary judgment on this basis.

*2. The Esquiro Call*

A statement of opinion or belief cannot be the basis of a defamation action because such statements cannot be "false."[34] SAFE contends that the statements made to Ms. Esquiro are statements of opinion, not statements of fact, and thus cannot support a defamation claim.[35] In SAFE's view, because the SAFE representative's statements were conditional, they are opinion. But as the Alaska Supreme Court explained in *Alaskaland.com*, "[e]ven if a statement is an opinion, it may give rise to a defamation claim

---

[31] SAFE occasionally refers in its briefing to Mr. Smith as "Mr. Phillips." At oral argument, SAFE clarified that these references are to Mr. Smith.

[32] Docket 339 at 19–20.

[33] *See* Docket 345 (conventional filing), Ex. 17 to Docket 344 (Kunst Decl.) at 2:15 ("It was Alarm Protection.") & 3:45 (warning of "aggressive door-to-door salespeople")

[34] *See Alaskaland.com, LLC v. Cross*, 357 P.3d 805, 820 (Alaska 2015).

[35] Docket 339 at 20.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 9 of 15

if its 'expression contains an implied assertion of false fact and is sufficiently derogatory as to cause harm to the subject's reputation.'"[36]

One portion of the conversation between the SAFE representative and Ms. Esquiro is particularly relevant to this inquiry:

> Ms. Esquiro: "But it's not like a, this isn't a fraud thing?"
> SAFE: "Well, that's a good question, and it lends itself to be."
> Ms. Esquiro: "Because they're misrepresenting you guys?"
> SAFE: "Correct."[37]

Although the Court may determine whether a statement was defamatory as a matter of law,[38] Alaska courts also recognize that whether a statement is one of opinion or fact is sometimes an appropriate question for the jury.[39] The Court finds that a rational jury could conclude that the statements to Ms. Esquiro "contain an implied assertion" of fact—for example, that Alarm Protection was "misrepresenting" SAFE, and was thus not to be trusted. The Court will not grant summary judgment on this basis.[40]

### 3. Vagueness of the Statements

SAFE contends that the recorded statements are too vague to support a claim of defamation per se.[41] A statement is defamation per se if it is "so unambiguous as to be

---

[36] *Alaskaland.com*, 357 P.3d at 820 (quoting *State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007)).

[37] Docket 345 (conventional filing), Ex. 19 to Docket 344 at 5:45.

[38] *See Alaskaland.com*, 357 P.3d at 820.

[39] *See* Alaska Civil Pattern Jury Instr. 16.06.

[40] SAFE does not separately address the statements made to the third customer, Mr. Erwin. In those statements, SAFE is alleged to have said that Alarm Protection was not honoring its promises to send buy out checks and was "not legitimate." *See* Docket 339 (Mot.) at 13. SAFE does allege that at least some of these statements were true, as discussed below.

[41] Docket 339 at 21.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 10 of 15

reasonably susceptible to only one interpretation—that is, one which has a natural tendency to injure another's reputation."[42] Statements that if true would "adversely affect [Alarm Protection's] fitness for the proper conduct of [its] lawful business, trade, or profession" fall in this category.[43] The Court concludes, rather easily, that statements that a company is "not legitimate" or "a fraud" are sufficiently unambiguous to constitute defamation per se.

### 4. Falsity or Truth of the Statements

SAFE argues that the statements it made were not defamatory because they were true. While it may be that some statements made by SAFE were indisputably true, there is at the very least a genuine factual dispute as to whether Alarm Protection is "not legitimate" or "a fraud." The truth or falsity of the statements is for the jury to decide after hearing the evidence; the Court will not grant summary judgment on this basis.

### 5. Privileged Statements

SAFE contends that its statements were privileged because they were made in the context of a business relationship.[44] As the Alaska Supreme Court has explained, a conditional privilege exists "when a person 'having a common interest in a particular subject matter believes that there is information that another sharing the common interest is entitled to know.'"[45] Such a common interest may exist "when a legal relationship exists

---

[42] *Greene v. Tinkler*, 332 P.3d 21, 39 n.72 (Alaska 2014) (quoting *Alaska Statebank v. Fairco*, 674 P.2d 288, 295 n.15 (Alaska 1983)).

[43] *Greene*, 332 P.3d at 39 (quoting Restatement (Second) of Torts § 573).

[44] Docket 339 at 22–23.

[45] *Briggs v. Newton*, 984 P.2d 1113, 1121 (Alaska 1999) (quoting *Schneider v. Pay 'N Save Corp.*,

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 11 of 15

between the defendant and the person on whose behalf he intervenes."[46] SAFE contends that because the customers were still technically under contract with SAFE, the statements to them were privileged.

Alarm Protection responds that the SAFE representatives making the statements did not know that the customers were still under contract with SAFE.[47] SAFE asserts in its reply that there is no authority for requiring such knowledge.[48] The Court disagrees. As noted above, a privilege exists when the person making the statement "*believes* that there is information that another sharing the common interest is entitled to know."[49] The Alaska Supreme Court has subsequently elaborated that a privilege exists when "the circumstances induce a correct or reasonable belief that (a) there is information that affects a sufficiently important interest of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the interest."[50] Thus, if the SAFE representatives making the statements did not believe there was any such common interest, then they cannot assert the privilege. The Ohio case that SAFE relies on in its reply says nothing to the contrary.[51]

---

723 P.2d 619, 623–24 (Alaska 1986)).

[46] *Briggs*, 984 P.2d at 1121 (quoting *Schneider*, 723 P.2d at 624).

[47] Docket 396 at 17.

[48] Docket 413 at 2.

[49] *Briggs*, 984 P.2d at 1121 (quoting *Schneider*, 723 P.2d at 623–24).

[50] *DeNardo v. Bax*, 147 P.3d 672, 679 (Alaska 2006) (quoting Restatement (Second) of Torts § 594).

[51] *See* Docket 413 at 2–3 (discussing *Hahn v. Kotten*, 331 N.E.2d 713 (Ohio 1975) (recognizing a special relationship between an insurer and insured giving rise, in some contexts, to a qualified

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 12 of 15

At trial, it will be SAFE's burden to prove the existence of a privilege.[52] SAFE's burden on this issue at summary judgment is to show that the undisputed facts show that every reasonable jury would conclude by a preponderance of the evidence that its statements were privileged. SAFE has not produced sufficient evidence to meet this burden, and the Court will not grant summary judgment on this basis. Moreover, there is at least a dispute of fact as to whether, if any such privilege existed, it was abused. The fact that the SAFE representatives apparently did not believe there was any existing legal relationship with the customers but nonetheless (allegedly) made defamatory comments about Alarm Protection is potentially potent evidence that the statements were made for a purpose other than that protected by the privilege.[53]

*6. Proof of at least Negligence*

To prove defamation, Alarm Protection must show at least negligence; SAFE contends that Alarm Protection cannot do so. SAFE asserts that it heard from some of its former customers that Alarm Protection salespeople "had been falsely informing SAFE's customers that SAFE had gone out of business, was going out of business, or that [Alarm Protection] had purchased SAFE's contracts in Alaska, among other things."[54]

---

privilege).

[52] *See DeNardo*, 147 P.3d at 679 & n.20 (citing *Briggs*, 984 P.2d at 1121). For claims of privilege in the tortious interference context, it is the plaintiff's burden to prove interference was not privileged. *See Sisters of Providence in Washington v. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 997 (Alaska 2003).

[53] *See Briggs*, 984 P.2d at 1121 (noting that the privilege may be abused if the statement is "not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged" (quoting *Schneider*, 723 P.2d at 625)).

[54] Docket 339 at 8.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 13 of 15

SAFE specifically cites to communications between one of its customers and SAFE's Vice President for Acquisitions.[55]

On its motion for summary judgment, SAFE must show that the undisputed facts entitle it to judgment as a matter of law—in this context because no reasonable jury could find that SAFE acted negligently. SAFE has shown that it had some information suggesting that Alarm Protection had told one customer that Alarm Protection was "'taking over' responsibility for monitoring [the customer's] security system,"[56] but it will be for the jury to determine whether, in light of this information, SAFE's subsequent conduct "create[d] an unreasonable risk of harm."[57] One aspect of this inquiry will be precisely what conduct SAFE engaged in, as the amount of investigation that a reasonable person would conduct could depend on how widely a person intended to publish the statement. Because the scope of SAFE's conduct is disputed (and subject to a possible inference from spoliation), the Court cannot assess the reasonableness of SAFE's actions as a matter of law.

*C. Privileged Interference*

SAFE contends that it was privileged to interfere with Alarm Protection's contracts because it had an interest in its own customers. However, because the Court will grant summary judgment to SAFE on the tortious interference claims based on Alarm

---

[55] *See* Docket 340 (Ratcliffe Decl.) at 2, ¶¶ 4–6; Docket 340-1 (email exchange confirming substance of conversation).

[56] Docket 340-1 at 1.

[57] Restatement (Second) of Torts § 580B cmt. g (defining the negligence standard in defamation cases).

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 14 of 15

Protection's failure to produce evidence of actual damages, the Court does not reach this issue.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART SAFE's Motion for Summary Judgment at Docket 337.[58]

The Court GRANTS the motion as follows:

- SAFE is entitled to summary judgment on Alarm Protection's first cause of action (tortious interference with contract), second cause of action (tortious interference with prospective business relationship), and fourth cause of action (defamation per quod).

- SAFE is entitled to partial summary judgment on Alarm Protection's fifth cause of action (violation of UTPA). SAFE is entitled to a judgment that it is not liable for damages to Alarm Protection for the alleged violation of the UTPA.

The Court DENIES the motion as to Alarm Protection's third cause of action (defamation per se), and DENIES the motion as to Alarm Protection's cause of action for an injunction pursuant to the UTPA.

DATED this 7th day of February, 2017 at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[58] SAFE filed an unredacted but otherwise identical version of the motion at Docket 339; that motion is also disposed of by this order.

Case No. 3:13-cv-00102-SLG, *SAFE v. Alarm Protection, et al.*
Order re Counterclaim Defendant's Motion for Summary Judgment
Page 15 of 15